**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** : | |
| : | Case No. 2:15-cr-00247 |
| **Plaintiff,** : | |
| : | **CHIEF JUDGE ALGENON L. MARBLEY** |
| **v.** : | |
| : | |
| **ROOSEVELT KELLY,** : | |
| : | |
| **Defendant.** : | |

## OPINION & ORDER

This matter comes before the Court on Defendant Roosevelt Kelly's Motion for Reconsideration. (ECF No. 33). For the following reasons, Defendant's Motion for Reconsideration is **GRANTED**.

### I.  BACKGROUND

On May 13, 2016, Roosevelt Kelly was sentenced to 84 months of imprisonment and 3 years of supervised released for one count of unlawful possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). (ECF No. 21). On October 28, 2020, this Court issued an Opinion and Order denying without prejudice Mr. Kelly's Motion for Compassionate Release, finding that Mr. Kelly had failed to avail himself of all available appeals and that his administrative remedies were not exhausted. (ECF No. 32). On November 6, 2020, the Defendant filed a Motion for Reconsideration of that Opinion and Order. (ECF No. 33). The Defendant argues that 18 U.S.C. § 3582(c)(1)(A) does not require an incarcerated person to exhaust all appeals available; he must pursue Bureau of Prisons ("BOP") remedies fully up and until 30 days after the warden receives his request. (*Id.* at 1–2). In support of this argument, Defendant cites *United States v. Alam*, 960 F.3d 831 (6th Cir. 2020), in which the Sixth Circuit found that "prisoners who seek compassionate

release have the option to take their claim to federal court within 30 days, no matter the appeals available." 960 F.3d at 834. On November 20, 2020, the Government filed a Response in Opposition. (ECF No. 34). After summarizing Mr. Kelly's arguments, the Government "concedes that the defendant has exhausted his administrative remedies" under *Alam* and discloses that the Government is required to do so "[a]s a matter of Department of Justice policy," even though Mr. Kelly did not pursue all appeals. (*Id.* at 3–4). The Government then argues that Mr. Kelly has failed to establish "extraordinary and compelling reasons" justifying his release, that the sentencing factors under 18 U.S.C. § 3553(a) weigh against his release, and that he poses a danger to the community—even more so now that he has allegedly contracted COVID-19. (*Id.* at 4–8).

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 59(e), a court will reconsider its own prior decision "if the moving party demonstrates: (1) a clear error of law; (2) newly discovered evidence that was not previously available to the parties; or (3) an intervening change in controlling law." *Owner-Operator Indep. Drivers Ass'n, Inc. v. Arctic Express, Inc.*, 288 F. Supp. 2d 895, 900 (S.D. Ohio 2003). Courts may also alter or amend a judgment when necessary "to prevent manifest injustice." *GenCorp., Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). Reconsideration due to a finding of manifest injustice or a clear error of law requires "unique circumstances," such as complete failure to address an issue or claim. *McWhorter v. ELSEA, Inc.*, No. 2:00-cv-473, 2006 WL 3483964, at *2 (S.D. Ohio Nov. 30, 2006) (citing *Collison v. Int'l Chem. Workers Union, Local 217*, 34 F.3d 233, 236 (4th Cir. 1994)). District courts have "considerable discretion under Rule 59(e)." *GenCorp, Inc.*, 178 F.3d at 834 (citing *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 174 (5th Cir.1990)). While courts have this considerable discretion, relief under Rule 59(e) is an "extraordinary remedy to be employed sparingly in the interests of finality and

conservation of scarce judicial resources." *Hernandez v. City of Saginaw*, No. 12-cv-11916, 2013 WL 4052632, at *2 (E.D. Mich. Aug. 12, 2013) (quoting *Wendy's Int'l, Inc. v. Nu–Cape Constr., Inc.*, 169 F.R.D. 680, 685 (M.D. Fla. 1996)).

### III.    LAW & ANALYSIS

#### A.    Motion for Reconsideration

Pursuant to 18 U.S.C. § 3582(c)(1)(A), a sentencing court may reduce a term of imprisonment, but only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). The Sixth Circuit held that this requirement is not a jurisdictional rule, but a claim-processing rule that "binds the courts only when properly asserted and not forfeited." *Alam*, 960 F.3d at 833. In *Alam*, the statute's requirement was characterized by the Sixth Circuit as a "mandatory condition." *Id.* at 834.

Central to this Court's prior decision was the issue of whether Mr. Kelly had pursued all of his administrative appeals with the BOP. (ECF No. 32 at 2–3). In his motion, Mr. Kelly argued that he had affirmatively met the requirements of Section 3852(c)(1)(A) because he had waited for more than 30 days after submitting his request to the Warden. (ECF No. 28 at 10–11). Mr. Kelly then directed to this Court the following: "If the Court finds that 18 U.S.C. § 3582(c)(1)(A) would require Mr. Kelly to exhaust all administrative appeals prior to seeking review in this Court, Mr. Kelly asks the Court to waive that requirement." (ECF No. 28 at 11). In its response, the Government cast doubt on whether Mr. Kelly had properly exhausted his remedies. (ECF No. 30 at 4 n.3). In support of this assertion, the Government cited several cases finding that the application of Section 3852(c)(1)(A) varied depending on whether the Warden responded to an

incarcerated person's request for relief or failed to do so. (*See id.*). Given that the Warden in this case had denied Mr. Kelly's request within 30 days and Mr. Kelly had failed to appeal further that decision, the Government suggested there existed a "persuasive argument" that the Defendant's motion was not properly ripe for review yet. (*Id.*). This Court, concerned with the potential for arbitrary and capricious enforcement of the claim-processing rule by the Government, determined that exhaustion was necessary when an incarcerated person had received a denial from a Warden before 30 days had elapsed. (ECF No. 32 at 4–5).

Now, Mr. Kelly seeks reconsideration of the decision, arguing that exhaustion of BOP remedies is not required under 18 U.S.C. § 3582(c)(1)(A) after 30 days have passed, regardless of whether the Warden has acted. (ECF No. 33 at 1). In support of his argument, the Defendant points this Court to language in *United States v. Alam*, wherein the Sixth Circuit noted that those seeking compassionate release "have the option to take their claim to federal court within 30 days, no matter the appeals available to them." 960 F.3d at 834. The Government has filed a response in opposition to the Defendant's motion and has conceded that the Defendant has exhausted his administrative remedies because 30 days have passed. (ECF No. 34 at 3). The Government notes that it is a "matter of Department of Justice policy" that it must concede the statutory exhaustion requirement when 30 days have passed between the submission of a request for compassionate relief to a warden and the filing of a motion in federal court. (*Id.*). This, however, is not the position that the Government took in its original response: the Government suggested that Mr. Kelly needed to fully exhaust his administrative appeals, but that it intended to waive the mandatory claim-processing rule in this instance. (ECF No. 30 at 4).[1]

---

[1] This Court notes that it has received several contradictory responses from the Government in various compassionate release matters, where the Government sometimes purports to waive the claim-processing exhaustion rule and other times seeks to enforce this rule, where 30 days have already elapsed. As a result of the uncertainty created by the Government's inconsistency as to when it would seek to enforce the rule in any one case, this Court issued its prior

The Sixth Circuit's discussion of administrative appeals in *Alam* is dispositive here. An individual seeking compassionate release may bring such a motion in this Court after 30 days have elapsed from the warden's receipt of her motion, "no matter the appeals available." 960 F.3d at 834. In *Alam*, the defendant seeking release had not waited 30 days before bringing his motion in federal court. *Id.* at 832. The Sixth Circuit explained that defendants are able to "pursue administrative review," but need not do so if 30 days have elapsed. *Id.* at 836. Following *Alam*, a motion for compassionate review will be ripe in either of the following circumstances: (1) if an incarcerated person receives a denial and is able to fully exhaust all of her administrative remedies *before* the 30-day waiting period has elapsed; or (2) whenever an incarcerated person waits 30 days from the date she submitted her request to the warden, regardless of whether the warden responds. In light of this language in *Alam*, this Court finds that it is necessary to withdraw its earlier Opinion and Order (ECF No. 32) to prevent manifest injustice. Accordingly, the Defendant's Motion for Reconsideration (ECF No. 33) is **GRANTED**.

### B. Motion for Compassionate Release

In view of the foregoing discussion, this Court finds that Mr. Kelly's Motion for Compassionate Release is ripe for review because more than 30 days have elapsed between his original request to the Warden and the filing of his motion in federal court. This Court will now address the merits of Mr. Kelly's Motion for Compassionate Release (ECF No. 28).

Pursuant to 18 U.S.C. § 3582(c)(1)(A), a sentencing court may "reduce the term of imprisonment" of a defendant for "extraordinary and compelling reasons" once the exhaustion requirement or 30-day waiting requirement has been satisfied. 18 U.S.C. § 3582(c)(1)(A); *Alam*, 960 F.3d at 834. A district court's decision under Section 3582(c)(1)(A) will be reviewed for abuse

---

decision in *Kelly* to promote judicial administration by minimizing this uncertainty and waste of judicial resources. (ECF No. 32 at 4).

of discretion and a district court "must supply 'specific factual reasons'" in support of its compassionate release decision. *United States v. Jones*, --- F.3d ----, 2020 WL 6817488, at *10 (6th Cir. Nov. 20, 2020). In *United States v. Jones*, the Sixth Circuit recently clarified the mechanics of compassionate review under 18 U.S.C. § 3582 where an incarcerated person has brought a motion on his own behalf. Prior to this decision, the continued applicability of U.S. Sentencing Guideline § 1B1.13 in compassionate release proceedings brought directly by incarcerated persons had been unresolved. *Jones*, 2020 WL 6817488, at *1. In *Jones*, the Sixth Circuit announced that U.S.S.G. § 1B1.13 is no longer considered an "applicable" policy statement "in cases where incarcerated persons file their own motions in district court for compassionate release." *Id.*

The *Jones* court also clarified that district courts should follow a three-step analysis when considering motions for compassionate release. *Id.* at *6. First, district courts must find whether "extraordinary and compelling reasons warrant" a sentence reduction. *Id*. Second, a court must determine whether the reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id.* Given that the *Jones* court found that U.S.S.G. § 1B1.13 was no longer applicable to motions brought by incarcerated persons on their own behalf, federal district courts may now skip this step in those instances and "have full discretion to define 'extraordinary and compelling' without consulting the policy statement." *Id.* at *9. Third, a court must consider the factors set forth in 18 U.S.C. § 3553(a) and determine whether, in the court's discretion, the reduction authorized by the statute is "warranted in whole or in part under the particular circumstances of the case." *Id.* at *6 (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

1. **"Extraordinary and Compelling Reasons" Analysis**

Under the analysis set forth in *Jones*, this Court must first determine whether "extraordinary and compelling reasons" warrant a reduction in sentence under 18 U.S.C. § 3852(c)(1)(A)(i). This court has "full discretion to define 'extraordinary and compelling'" without consulting the policy statement § 1B1.13." *Jones*, 2020 WL 6817488, at *9. In his original Motion, Mr. Kelly argued that his numerous medical conditions, including obesity, diabetes, and heart complications, would place him at greater risk of severe illness or more imminent death if he contracts COVID-19. (ECF No. 28 at 7). In support of his Motion, the Defendant cites several decisions where federal courts have ordered the release of defendants who have a similar diagnosis. (*Id.* at 9–10). In opposition, filed prior to the decision in *Jones*, the Government contended that this Court was bound by the Sentencing Commission's policy statement in determining "extraordinary and compelling reasons" and that Mr. Kelly did not fall into any of the categories in U.S.S.G. § 1B1.13. (ECF No. 30 at 7. The Government also notes that a chronic medical condition putting an incarcerated person at elevated risk of serious illness or death from COVID-19 may, in combination with the COVID-19 pandemic, constitute an "extraordinary and compelling reason" under the First Step Act. (*Id.* at 8–9). The Government concedes that Mr. Kelly's diagnosis of Type 2 diabetes and obesity would place him at a higher risk of COVID-19 complications, but argues that he has failed to demonstrate an actual diagnosis of these conditions. (*Id.* at 9). Mr. Kelly filed a reply and attached a copy of his medical records, dated March 6, 2020, showing these diagnoses. (ECF No. 31-1 at 3).

On November 27, 2020, Defendant filed a Reply to the Motion for Reconsideration, attaching his positive COVID-19 test result from October 2020. (ECF No. 35-1). The Government had argued that contracting COVID-19 would undermine the Defendant's request for

7

compassionate relief "because granting him relief would not provide the protection he seeks, to wit, reduction of the risk of becoming infected with the virus." (ECF No. 34 at 4–5). The Government further argues that compassionate release should be denied to a COVID-19 positive individual where it is not demonstrated that an individual is afflicted with severe illness, that he cannot provide self-care, that he is not expected to recover, or that the medical care available is inadequate. (*Id.* at 5). In response to these arguments, Mr. Kelly argues that he is still at risk of infection from the same strain or a different strain," and that such reinfection could be fatal. (ECF No. 35 at 2). He also notes that there can be serious long-term consequences from COVID-19 infections. (*Id.* at 2–3). Mr. Kelly also notes that he is unable properly to care for himself or follow CDC guidelines within the BOP. (*Id.*).

As an initial matter, this Court recognizes the devastating impact of the COVID-19 pandemic and that prison populations are subject to heightened vulnerability. The spread of COVID-19 in prisons has been well documented and FCI Allenwood's medium security complex, where Mr. Kelly is confined, had 49 active cases of COVID-19 among the incarcerated population as of November 23, 2020.[2] With respect to Mr. Kelly's medical conditions, the CDC has indicated that individuals with serious underlying health conditions—including obesity and Type 2 diabetes mellitus—are at a higher risk for severe illness from COVID-19.[3] Mr. Kelly has already been infected with COVID-19 in early October 2020 and his filed Reply on November 27, 2020 suggests that he has made a recovery. (ECF No. 35). In his Reply, he raises the potential for reinfection of COVID-19, or a first infection of a different strain, as continued reasons necessitating

---

[2] *See* BOP, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/, last accessed 11/23/2020 at 4:00 p.m.
[3] *See* CDC, *People Who Are at Higher Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html, last accessed 11/23/2020 at 4:00 p.m.

compassionate relief. He also raises the issue of potential long-term complications from COVID-19, but he does not assert that he is experiencing any continued health complications from his infection.

This Court does not reach the issue of whether an individual who has contracted and recovered from COVID-19 can still demonstrate "extraordinary and compelling reasons" within the meaning of the First Step Act based on the potential for reinfection and longer-term complications. Even if Mr. Kelly suceed on his arguments that reinfection and longer-term health complications, coupled with his current diagnoses, could constitute "extraordinary and compelling reasons" within the meaning of the First Step Act, this Court would deny him relief based on an analysis of the Section 3553(a) sentencing factors.

### 2. Section 3553 Sentencing Factors Analysis

When an incarcerated person demonstrates "extraordinary and compelling reasons" which could justify a reduction in sentence, this Court must also consider "all relevant § 3553(a) factors before rendering a compassionate release decision." *Jones*, 2020 WL 6817488, at *11. A court does not need to "specifically articulat[e]" every single Section 3553(a) factor in its analysis; rather, the record "as a whole" must indicate that the pertinent factors were taken into account by the court. *Id.* For a reviewing court, the record as a whole will constitute both the original sentencing proceeding and the compassionate release decision. *Id.* at *11–12. Section 3553(a) instructs a court to consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

9

      (B) to afford adequate deterrence to criminal conduct;

      (C) to protect the public from further crimes of the defendant; and

      (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for ... the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ...;

(5) any pertinent policy statement ... issued by the Sentencing Commission ...;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

In support of his Motion for Compassionate Release, Mr. Kelly argues that a reduction in his sentence would not diminish the seriousness of the offense or present a risk to the public. (ECF No. 28 at 11). Mr. Kelly has completed life skills classes while incarcerated and was last disciplined nearly two-and-a-half years ago. (ECF No. 28 at 11–12). With good conduct time credited, Mr. Kelly has approximately one year left of his sentence and seeks an order reducing it to time served. (*Id.* at 12). In his Reply, Mr. Kelly further highlights that he has experienced "mental growth," as evidenced by his ability to complete a drug education and treatment program, when he had previously withdrawn from such a program. (ECF No. 31 at 3). He also notes that recidivism studies show that individuals are less likely to reoffend as they grow older, and that he is now nearly 50 years old, suggesting that he is no longer a threat to society. (*Id.* at 4).

The Government opposes this request on the grounds that the Section 3553(a) factors "weigh strongly against this request for premature release." (ECF No. 30 at 10). The Government draws this Court's attention to the seriousness of the underlying offense, the Defendant's criminal

history, including several violent offenses, and personal characteristics. (*Id.* at 10–12). The Government also argues that, if Mr. Kelly has in fact contracted COVID-19, "his medical condition makes him more of a danger to the community." (ECF No. 34 at 8).

Mr. Kelly pled guilty in 2015 to one count of illegal possession of a firearm by a convicted felon in violation of §§ 922(g)(1) and 924(a)(2) and was sentenced by this Court on May 3, 2016. (ECF Nos. 10, 21). At his sentencing hearing, this Court considered the Defendant's mental health, mitigating circumstances surrounding the underlying events, and the nature and extent of the Defendant's criminal record. (ECF No. 24). This Court also considered the need to protect the public safety in imposing a sentence. (*Id.*). In imposing its sentence, this Court considered all of the Section 3553(a) factors, but emphasized seriousness of the offense, the nature and characteristics of the defendant including his age, mental health condition, and extensive criminal record, and the need to protect public safety. (*Id.*). Mr. Kelly was sentenced to 84 months of imprisonment and a 3-year term of supervised release. (ECF No. 21).

This Court must consider both the health risk to the individual and the interests served by continued incarceration based on the nature and seriousness of the offense. This Court again finds that the seriousness of the offense and the Defendant's criminal record, including violent offenses, counsels in favor of denying a reduction in sentence. Mr. Kelly has a lengthy criminal history leading up to the current offense, in which Mr. Kelly has fired shots at others in the course of both arguments and robberies, used a stun gun against a police officer, and poured hot grease onto an individual who was bound up. (PSI ¶¶ 19–62). After his release for felonious assault at age 41, Mr. Kelly violated the terms of his supervised release by illegally carrying a firearm. (PSI ¶¶ 8, 62). This Court concludes that the nature of the Defendant's crime in this case, as well as his history of violence, are of serious concern to the community. The Court therefore finds that the retribution,

11

deterrence, incapacitation, and rehabilitation interests served by the original sentence counsel against early release in this case.

For these reasons, Mr. Kelly's Motion for Compassionate Release (ECF No. 28) is **DENIED**.

### IV. CONCLUSION

For these reasons, Mr. Kelly's Motion for Reconsideration (ECF No. 33) is **GRANTED** and his Motion for Compassionate Release (ECF No. 28) is **DENIED**.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: December 1, 2020**